Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9739 | **DATE** | 4/7/2004 |
| **CASE TITLE** | Sedeman v. Korczak, et. al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant Thermal Solutions' Motion for Summary Judgment (doc. #56)
Defendant CRC-Evans' Motion for Summary Judgment (doc. # 58)
Plaintiffs' Motion to Strike (doc. #80)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] . Enter Memorandum Opinion and Order. For the attached reasons, Defendant Thermal Solutions' motion for summary judgment (doc. #56) is GRANTED in part and DENIED in part. To the extent that Plaintiffs raise claims of negligent entrustment, summary judgment in favor of Thermal Solutions is granted. As to all other matters, Thermal Solutions' motion for summary judgment is DENIED. Defendant CRC-Evans' motion for summary judgment (doc. #58) is DENIED. Plaintiffs' motion to strike (doc. #80) is DENIED as moot.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | APR 0 8 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | 83 |
| | Copy to judge/magistrate judge. | | |
| JHC courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN M. KORCZAK AND PHILIP J. )
SCHMIDT, as the Administrator of )
the Estate of Frances L. Korczak )
and Babe Doe Korczak, )
 )
Plaintiffs, )
 )
v. ) Case No. 01 C 9739
 )
 ) The Honorable William J. Hibbler
 )
FAIZEL SEDEMAN, a/k/a FAIZEL )
FEDEMAN, THERMAL SOLUTIONS, INC., )
CRC-EVANS PIPELINE INT'L, INC., AND )
PIPELINE INDUCTION HEAT LTD., )
 )
Defendants. )
 )

## MEMORANDUM OPINION AND ORDER

A tragic accident involving vehicles driven by Kevin Korczak and Faizel Sedeman resulted in the death of Korczak's wife, Frances Korczak, and their unborn child, Baby Doe Korczak. After the accident, Korczak sued Sedeman as well as Thermal Solutions and CRC-Evans Pipeline International. Korczak alleges that Sedeman negligently caused the accident because he drove on the wrong side of the road and further alleges that Thermal Solutions and CRC-Evans are vicariously liable for Sedeman's negligence under the doctrines of *respondeat superior* and negligent entrustment. The corporate Defendants have moved for summary judgment, both arguing that Sedeman was not acting as their agent at the time of the accident. CRC-

1

Evans also argues that it loaned Sedeman to Thermal Solutions and therefore it is not liable for his actions. Thermal Solutions argues that it is entitled to summary judgment on the Plaintiffs' negligent entrustment claims because Sedeman had a valid international driver's license. Thermal Solutions' motion for summary judgment is GRANTED in part and DENIED in part. CRC-Evans' motion for summary judgment is DENIED.

I. Factual Background

Faizel Sedeman worked for International Heat Treatment (IHT), a subsidiary of CRC-Evans, and was a citizen and resident of South Africa. (Def. Thermal Solutions 56.1(a)(3) Statement, ¶¶ 5, 9; Pl. 56.1(b)(3)(B) Statement, ¶ 1). In 2001, Thermal Solutions asked IHT to supply it with heat treatment technicians for a contract that it had with an Illinois Citgo refinery. (Pl. 56.1(b)(3)(B) Statement, ¶ 10). As a result, IHT contracted with Thermal Solutions to send six employees, all of whom, including Sedeman, were citizens of South Africa, to Thermal Solutions to work from its Griffith, Indiana location. (Def. Thermal Solutions 56.1(a)(3) Statement, ¶¶ 10; Sedeman Dep. at 37). According to the parties' arrangement, IHT billed Thermal Solutions $19/hour for the workers' time, while Thermal Solutions billed Citgo $22/hour for their time. (Pl. 56.1(b)(3)(B) Statement, ¶¶ 4, 12). Sedeman, however, received his pay, based on the number of hours that he worked at the Citgo refinery, directly from IHT. (Def. Thermal Solutions 56.1(a)(3) Statement, ¶ 13). Thermal Solutions paid for Sedeman's travel from and back to South Africa. (Pl. 56.1(b)(3)(B) Statement, ¶ 11). Thermal

Solutions also paid for Sedeman's food and lodging while he remained in the United States. (Pl. 56.1(b)(3)(B) Statement, ¶¶ 20-21).

During the time Sedeman worked at the Citgo refinery, he was supervised by Phil Robinson, Thermal Solutions' Citgo jobsite project manager. (Pl. 56.1(b)(3)(B) Statement, ¶ 22). Robinson told Sedeman when to report to work, when to leave, and gave other orders and directions regarding his work. (Pl. 56.1(b)(3)(B) Statement, ¶¶ 23, 25). Robinson also had the authority to discharge Sedeman. (Pl. 56.1(b)(3)(B) Statement, ¶¶ 26-27). At the same time Sedeman's contract with IHT specified that it had the absolute discretion to set and change Sedeman's working hours. (Def. CRC-Evans Mot. Summ. J., Ex. G). Further, Sedeman's contract gave IHT the right to terminate Sedeman and directed Sedeman to follow IHT's grievance procedures should he have a dispute regarding his employment. (Def. CRC-Evans Mot. Summ. J., Ex. G).

When Sedeman arrived at the Citgo refinery, Thermal Solutions supplied him with a minivan to drive while he was in the United States. (Def. Thermal Solutions 56.1(a)(3) Statement, ¶ 14). Sedeman had an international driver's license. (Def. Thermal Solutions 56.1(a)(3) Statement, ¶ 15). Thermal Solutions did not, however, supply all of the South African workers with minivans, instead renting only three vans for general work use. (Pl. 56.1(b)(3)(B) Statement, ¶¶ 30, 33). According to Sedeman, he received a one of the minivans because he was "the best driver out of the whole lot." (Sedeman Dep. at 55). Thermal Solutions occasionally directed Sedeman to drive Robinson and other Thermal Solutions to and from the airport, the motel at which the South African workers stayed, the Citgo refinery, and the Griffith, Indiana shop. (Pl.

56.1(b)(3)(B) Statement, ¶¶ 32). Each day Sedeman drove three or four of the South African workers to the job site from the hotel at which they stayed. (Pl. 56.1(b)(3)(B) Statement, ¶¶ 31). Furthermore, Sedeman admitted in his deposition that it was his responsibility, even if he wanted to go somewhere else, to drive Tarkwin Enrick, another South African worker, back to the hotel, because there was no public transportation and Enrick had no other way to return to the hotel from the job site. (Sedeman Dep. at 269). Although Sedeman did not bill for travel time, Thermal Solutions reimbursed him for all gas expenses. (Def. Thermal Solutions 56.1(a)(3) Statement, ¶ 19; Pl. 56.1(b)(3)(B) Statement, ¶ 36).

On November 11, 2001, Sedeman had signed out for the day, and was driving Enrick to the hotel when the accident occurred. (Def. Thermal Solutions 56.1(a)(3) Statement, ¶ 22; Pl. 56.1(b)(3)(B) Statement, ¶ 49). The accident occurred shortly after Sedeman pulled out of the Citgo gate. (Pl. 56.1(b)(3)(B) Statement, ¶ 49).

As a result of the accident, the Plaintiffs filed a twenty-count complaint against Sedeman, Thermal Solutions, and CRC-Evans. With regard to the corporate Defendants, the Plaintiffs allege that they are liable because Sedeman acted as their agent at the time of the accident and because they negligently entrusted Sedeman with their vehicle. Thermal Solutions moves to dismiss on two grounds: (1) that Sedeman did not act as its agent at the time of the accident; (2) that it did not negligently entrust Sedeman with the vehicle. CRC-Evans also moves for summary judgment on two grounds: (1) that Sedeman was not acting as its agent at the time of the accident;

(2) even if Sedeman was acting as an agent at the time of the accident, he was an agent of Thermal Solutions and not CRC-Evans.

## II. Standard of Review

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts in the record showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. The Court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court has jurisdiction over this dispute by diversity, as the parties are of diverse citizenship and the amount in controversy is in excess of $75,000. 28 U.S.C. § 1332(a). A federal court sitting in diversity applies the substantive law of the forum state as well as its conflicts rules. *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 96 S. Ct. 167, 46 L. Ed. 2d 3 (1975); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Here, the Plaintiffs are citizens of Illinois and

5

the accident occurred in Illinois, and the parties agree that Illinois law should apply. Thus, the Court applies Illinois law.

III. Analysis

*A.    Scope of Employment*

Both Thermal Solutions and CRC-Evans argue that Sedeman was not acting as an agent at the time of the accident. The crux of the corporate Defendants' argument is that Sedeman had clocked out for the day and at the time of the accident was traveling to the hotel at which he stayed. Under Illinois law, for an employer to be vicariously liable for an employee's torts under the doctrine of *respondeat superior*, the torts must have been committed within the scope of the employment. *See Pyne v. Witmer*, 129 Ill. 2d 351, 360, 543 N.E. 2d 1304 (1989); *Hogun v. City of Chicago*, 319 Ill. App. 531, 536, 49 N.E. 2d 861 (1943). Whether such a relationship exists is a factual question, and summary judgment is inappropriate when scope of employment is at issue. *See, e.g., Pyne*, 129 Ill. 2d at 358-59; *Laird v. Baxter Health Care Corp.*, 272 Ill. App. 3d 280, 289, 650 N.E. 2d 215 (1995); *Giannoble v. P & M Heating and Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1056, 599 N.E. 2d 1183 (1992); *Marco v. County of McHenry*, 218 Ill. App. 3d 503, 505, 578 N.E. 2d 579 (1991). In other words, if reasonable people could draw different conclusions regarding whether a person acted within the scope of his employment, summary judgment is not proper.

Illinois does not precisely define "scope of employment," and instead draws from the Restatement (Second) of Agency. *Pyne*, 129 Ill. 2d at 359-60; *Giannoble*, 233 Ill.

App. 3d at 1056; *Snodgrass v. Jones*, 957 F. 2d 482, 484 (7th Cir. 1992). The Restatement (Second) of Agency sets forth three criteria to consider when determining whether an agent's conduct falls within the scope of employment:

> Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master . . .

Restatement (Second) of Agency § 228; *see also Pyne*, 129 Ill. 2d at 359-60.

The general rule is that travel between work and home is not within the scope of employment. *See Snodgrass*, 957 F.2d at 485; *Giannoble*, 233 Ill. App. 3d at 1062 (citing *Urban v. Industrial Commission*, 34 Ill. 2d 159, 214 N.E.2d 737 (1966)); *Marco*, 218 Ill. App. 3d at 506. There are, however, exceptions to this rule, most notably, when employers cause employees to travel away from a regular workplace, when employers provide the transportation, or when the employees' travel "is at least partly for their employers' purposes rather than simply serving to convey the employees to or from a regular jobsite." *Pyne*, 129 Ill. 2d at 356; *Marco*, 218 Ill. App. 3d at 506; *Snodgrass*, 957 F.2d at 485.

The Court finds that reasonable persons could differ as to whether Sedeman was acting in the scope of his employment. Thermal Solutions and CRC-Evans both argue that, because Sedeman had clocked out for the day and because he was driving to the hotel at which stayed, he was not acting within the scope of his employment. Thermal Solutions' and CRC-Evans' argue that it is undisputed that Sedeman was free to do his own business with no direction from Thermal Solutions once he clocked out, and therefore the accident was outside the scope of his employment. But Thermal

7

Solutions' and CRC-Evans' characterization of the undisputed facts is inaccurate, and both also ignore the exceptions to the general rule regarding travel to and from work.

When viewed in the light most favorable to the Plaintiffs, a reasonable inference can be drawn that Thermal Solutions required Sedeman to transport other South African employees to and from work. At the time of the accident Sedeman was transporting Enrick to the hotel where they stayed. Sedeman testified that each day he would transport three or four employees to the job site in the minivan lent to him by Thermal Solutions. But not only did Sedeman testify that he transported other employees to and from the job site, he also testified that, even if he desired to go somewhere else, it was his responsibility to drive Enrick back to the hotel because Enrick otherwise had no method of returning to the hotel after work. The inference that Thermal Solutions required Sedeman to transport his coworkers to and from the worksite finds further support in Thermal Solutions' decision to rent only three minivans. The record reflects that although Thermal Solutions supplied Sedeman with a minivan it did not supply each of the other foreign workers with a minivan. Thus, the workers who had no access to minivans were required to rely on Sedeman for transportation to and from the workplace. Indeed, Sedeman stated that he had the responsibility of transporting the other workers because he was "the best driver out of the whole lot." Given Sedeman's testimony, it is reasonable to infer that Thermal Solutions directed him to provide transportation to and from the worksite to the other South African workers. Therefore, there is a dispute whether Sedeman was free to drive wherever he chose after leaving work, and this dispute is material.

8

Here, Thermal Solutions clearly benefitted from Sedeman's use of the minivan. First, Sedeman provided transportation to three to four workers on a daily basis. Without relying on Sedeman to provide this service, Thermal Solutions could not have enjoyed the services of the other workers. Second, by renting a minivan and relying on one worker to provide transportation for others, Thermal Solutions was able to save money on rental costs and gasoline. Moreover, if Thermal Solutions directed Sedeman to provide transportation to other workers, then the act of traveling to and from work is of the kind Sedeman was hired to perform and occurred within the time and scope of his employment. *See, e.g., Hindle v. Dillbeck*, 68 Ill. 2d 309, 370 N.E. 2d 165 (1977) (where crew members that depended on company to provide transportation to and from the job site, an injury during a trip to or from work was incurred in the course of employment); *Hall v. DeFalco*, 178 Ill. App. 3d 408, 533 N.E. 2d 448 (1988) (employer who supplies a means of transportation to or from work has brought travel to and from work within the scope of employment); *see also Anderson v. Falcon Drilling Co.*, 695 P. 2d 521, 524-25 (Ok. 1985) (when employer required employees to carpool, they were within the scope of employment when traveling to and from work because the travel involved a benefit to employer).

Contrary to the Defendants' argument, there is a dispute regarding whether Sedeman was free to drive where he chose after work. A reasonable finder of fact could conclude that Thermal Solutions required Sedeman to drive other employees to and from work. Consequently, a reasonable finder of fact could find that transporting employees to and from work was part of Sedeman's job responsibilities and therefore

could also conclude that Sedeman was acting within the scope of his employment at the time of the accident, as he was transporting another employee to or from work. The Defendants' motion for summary judgment on the ground that Sedeman was not acting within the scope of his employment at the time of the accident is therefore DENIED.

B.  *Loaned Employee*

CRC-Evans offers another reason why summary judgment should be granted in its favor. According to CRC-Evans, its subsidiary, IHT, loaned Sedeman to Thermal Solutions. An employee in the general employment of one company may, with his consent, be loaned to another company for a special purpose. *See Heinrich v. Peabody Int'l Corp.*, 99 Ill. 2d 344, 351-52, 459 N.E.2d 935 (1984); *Haight v. Aldridge Elec. Co.*, 215 Ill. App. 3d 353, 365-66, 575 N.E. 2d 243 (1991); *Mosley v. Northwestern Steel & Wire Co.*, 76 Ill. App. 3d 710, 718-19, 394 N.E.2d 1230 (1979). When such a transfer occurs, the second employer, not the first, would be liable for the employee's negligence. *Heinrich*, 99 Ill. 2d at 351-52; *Richard v. Illinois Bell Telephone Co.*, 66 Ill. App. 3d 825, 832, 383 N.E. 2d 1242 (1978) (citing *Merlo v. Public Service Co.*, 381 Ill. 300, 45 N.E.2d 665 (1942)). Whether such a transfer has occurred, however, is usually a question of fact, but may become a question of law where the undisputed facts are susceptible to but a single inference. *Haight*, 215 Ill. App. 3d at 366; *Richard*, 66 Ill. App. 3d at 832.

CRC-Evans argues that the undisputed facts establish that it loaned Sedeman to Thermal Solutions for the special project at the Citgo refinery, and therefore it is no longer liable for any of Sedeman's alleged negligence. Again, CRC-Evans'

characterization of the undisputed facts is inaccurate. CRC-Evans relies heavily on testimony from Sedeman that Robinson, Thermal Solutions' supervisor at the Citgo site, had the authority to direct Sedeman's work and to discharge him. CRC-Evans cites a multitude of cases to support its contention that because Thermal Solutions had the right to control Sedeman, he was a "loaned employee." (Def. CRC-Evans' Mot. Summ. J. at 7-12) (citing *American Stevedores Co. v. Industrial Commission*, 408 Ill. 449, 452-53, 97 N.E.2d 325 (1951); *Willfong v. Dean Evans Co.*, 287 Ill. App. 3d 1099, 679 N.E. 2d 1252 (1997); *Haight*, 215 Ill. App. 3d 353, 575 N.E. 2d 243; *Highway Ins. Co. v. Sears Roebuck & Co.*, 92 Ill. App. 2d 214, 235 N.E. 2d 309 (1968); *A.J. Johnson Paving Co. v. Industrial Commission*, 82 Ill. 2d 341, 412 N.E. 2d 477 (1980); *Chicago"s Finest Worker's Co. v. Industrial Commission*, 61 Ill. 2d 340, 335 N.E. 2d 434 (1975). But each of the cases, but for *Haight*, examines whether a loaned employee relationship exists under the Worker's Compensation Act, and not in the context of employer liability for the negligence of its employees. The distinction is important because the standard for demonstrating that an employee has been loaned differs depending on the context. *See County of Tazewell v. Industrial Commission*, 193 Ill. App. 3d 309, 315-16, 549 N.E. 2d 805 (1989) (noting the difference between the loaned servant doctrine in the context of workers' compensation and personal injury resulting from an agent's negligence).

Illinois courts have repeatedly made clear that whether an employee sent by his general employer to another for the performance of special work becomes a loaned

employee only if "he is *wholly* free from the control of the first employer and *wholly* subject to the control of the second employer." *Richard*, 66 Ill. App. 3d at 832 (emphasis added); *see also Merlo*, 381 Ill. at 320; *County of Tazewell*, 193 Ill. App. 3d at 315-16; *Mosley*, 76 Ill. App. 3d at 719. It is not sufficient that an employee is partially under the control of a third person or even takes day-to-day directions from a third person. *Richard*, 66 Ill. App. 3d at 832-34. To create a loaned employee relation, the original employer "must resign full control of the employee." *Foster v. Englewood Hosp. Ass'n*, 19 Ill. App. 3d 1055, 1060, 313 N.E. 2d 255 (1974). Further, when a general employer has the authority to substitute another servant at any time, when the time of the new employment is short, and when the loaned servant is a specialist, Illinois courts have found that an employee is not a loaned employee but instead continues his general employment. *See Richard*, 66 Ill. App. 3d at 833 (citing *Robinson v. McDougal-Hartmann Co.*, 133 Ill. App. 2d 739, 742-43, 272 N.E. 2d 513 (1971)).

There is evidence in the record from which a reasonable inference can be drawn that CRC-Evans did not fully relinquish control of Sedeman. Among other things, in the contract Sedeman signed with CRC-Evans' subsidiary, CRC-Evans gave itself absolute discretion to set and change Sedeman's working hours. (Def. CRC-Evans' Mot. Summ. J., Ex. G). CRC-Evans also retained the right to terminate Sedeman and directed him to follow its grievance procedures should he have any grievance. (Def. CRC-Evans' Mot. Summ. J., Ex. G). Sedeman testified that he understood that IHT

retained the right to terminate him at any point. (Sedeman Dep. at 270). These facts are enough to place in dispute the question of whether Sedeman was "wholly free from the control" of CRC-Evans. Therefore, a jury must decide whether Sedeman was a loaned servant, and summary judgment on that ground is improper.

C. *Negligent Entrustment*

Plaintiffs claim that Defendants are liable for negligently entrusting vehicles leased by Thermal Solutions to Sedeman. Plaintiffs' rest their argument on three facts: 1) that Sedeman learned to drive on the left side of the road and was unfamiliar with driving on the right side of the road; 2) that Sedeman did not have a valid chauffeur's license; and 3) that at the time of the accident Sedeman had recently finished a 7-day work week during which he had worked 94.5 hours. Thermal Solutions argues that these facts by themselves are insufficient to establish that it negligently entrusted Sedeman with the minivan. The Court agrees.

A "lender may be liable for negligently entrusting an automobile to another, but only if (1) the lender knows or should know that the one to whom he loaned it is incompetent, inexperienced or reckless in its use, and (2) it was this incompetence, inexperience or recklessness that was a proximate cause of the resulting accident." *McGath v. Price*, 342 Ill. App. 3d 19, 28, 793 N.E.2d 801 (2003).

The fact that Sedeman was unfamiliar with the driving customs in the United States can be dispensed with quickly. Sedeman held a valid international driver's license at the time of the accident. Under Illinois law, a non-resident who possesses a valid license issued to him in his home state or country may operate a motor vehicle

13

in Illinois. 625 ILCS 5/6-102(2). Sedeman was thus competent under Illinois law to drive in Illinois. The Plaintiffs argue, however, that because Sedeman transported his coworkers to and from work, he was required to have a chauffeur's license. The Plaintiffs do not point to any statute that requires that someone driving co-workers obtain a chauffeur's license. *See, e.g., Richards v. Checker Taxi Co.*, 168 Ill. App. 3d, 154, 522 N.E.2d 650 (1988) (noting that Chicago Municipal Code, ¶ 28.1-3(2)(3) requires Chauffeur's License for taxi drivers); *Leuthi v. Yellow Cab Co.*, 136 Ill. App. 3d 829, 483 N.E.2d 1058 (1985) (noting that Chicago Municipal Code requires persons transporting others for hire must have a license as a public chauffeur). Moreover, the Plaintiffs point to no evidence to suggest that the fact that Sedeman's was not licensed to transport coworkers was a proximate cause of the accident. Plaintiffs suggest instead that it was Sedeman's unfamiliarity with the custom of driving on the right side of the road that was the proximate cause of the accident. Lastly, Plaintiffs argue that Sedeman was "exhausted" at the time of the accident from having worked 94.5 hours. However, it does not follow that merely because Sedeman worked a long week (albeit only 10.5 hours longer than a typical week), he was too tired to drive safely. Sedeman did not inform anyone at Thermal Solutions that he could not drive safely. Nor did Sedeman later testify that he had been too tired to drive. There simply is no evidence that Sedeman was so exhausted from his work that he was unable to drive safely. Moreover, Plaintiffs point to no case law or state regulation that supports their speculation that someone who has worked extensive hours over the course of a week is unfit to drive. *Cf. Smith v. Solfest*, 65 Ill. App. 3d 779, 382 N.E.2d 831 (1978)

(passenger contributed to her injuries resulting from a car crash when she encouraged another to drive, knowing that the driver had been awake for 23.5 hours and had already been traveling for 5 hours).

Sedeman had a valid driver's license at the time of the accident. There is no evidence to suggest that Thermal Solutions knew or should have known that Sedeman was not competent to drive a vehicle merely because he was from another country or because he had a long week at work. Consequently, to the extent that the Plaintiffs' claims rest on a theory of negligent entrustment, summary judgment in favor of the corporate Defendants is GRANTED.

IT IS SO ORDERED

4/7/04
Dated

The Honorable William J. Hibbler
United States District Court